## A09A0974. ALLISON v. THE STATE.
(683 SE2d 104)

MIKELL, Judge.

After a jury trial, Steve Lamar Allison was convicted of three counts of felony theft by receiving and one count of misdemeanor theft by receiving. He pled guilty to possession of a gun by a convicted felon. Allison received an aggregate sentence of ten years to serve and ten years probation. On appeal, Allison challenges the sufficiency of the evidence and the denial of his motion to suppress. We affirm.

> On appeal from a criminal conviction, we view the evidence in a light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the record shows that the items that were the subject of the charges filed against Allison were a Lincoln welder (Count 1), which was the property of a construction company, a 12-gauge shotgun (Count 2), which was the property of Margie Abernathy, a Makita saw (Count 3), which belonged to Eric Ferguson; and a road sign (Count 4), which was the property of the Georgia Department of Transportation ("GDOT"). Eric Ferguson testified that in February 2005, he reported that his Makita saw had been stolen; that he had not given Allison permission to have the saw; that he had worked with Allison before and had been engaged to Allison's daughter, Stacy; and that Allison had stolen other items from him after Ferguson and Stacy ended their relationship. Ferguson testified that he discovered that his saw was missing after receiving a phone call from Janice Thompson, Allison's ex-wife, and Stacy, who stated that the saw was on their property. Even though Thompson and Allison had been married and divorced twice, they lived in the same house. Ferguson acknowledged that he had previously lived with Allison and his family for a period of time but testified that he had not left any of his property there.

Janice Thompson testified that on February 7, 2005, she went to the Hall County Sheriff's Department and reported that Allison was on drugs, that items were showing up at their house, that people were entering and exiting the house during the night, and that she

---

[1] (Citations omitted.) *Al-Amin v. State*, 278 Ga. 74 (1) (597 SE2d 332) (2004).

did not know how to handle the situation. Thompson told the police that Allison had a road sign, which he told her he wanted to collect, and a welder, which Allison said he had gotten from another man. Thompson testified that Allison had guns in his possession, which he told her belonged to Margie Abernathy, but he did not explain how he acquired them. However, Thompson also testified that Abernathy's daughter asked Allison to come get the guns and told him he could have all but one of them.

Richard Alford testified that he and Allison worked for the same employer in 1997; that Allison worked for him for one day in 2004; that a dispute arose because Allison did not want to be paid under his own name and social security number; that some time later, he contacted the police to report that a welder had been stolen from his shop; and that the welder was found by police at Allison's house.

Investigator Brian Henderson of the Hall County Sheriff's Office testified that he obtained a search warrant to search Allison's residence after talking with Thompson, who was a confidential informant. The affidavit given in support of the search warrant provides that Thompson was considered to be a reliable informant and that she indicated that Allison was in possession of methamphetamine and a stolen engine joist.

The search was executed on February 7, 2005. The residence searched was a single family, one-story home on a slab, with a back yard. There was a modular shed located approximately 50 feet from the residence. Henderson testified that they seized a welder, a firearm, drug paraphernalia, and a street sign. The firearm, which was sitting against a wall, was wrapped in a piece of fabric and secured by duct tape. The engine hoist was located and returned to its owner, and no charges were filed in connection with it. Henderson testified that the officers were told that Allison sold the Makita saw to Terry Bennett for $100. The officers went to Bennett's house, and Bennett admitted that he bought the saw from Allison for $100. The Makita saw was taken from Bennett's house and returned to Eric Ferguson, after he confirmed that it was his. The officers located drug paraphernalia in Allison's bedroom and read him his *Miranda* rights. Allison admitted that the paraphernalia belonged to him but refused to answer any other questions.

1. We first address Allison's argument that his motion to suppress should have been granted because the warrant was not particular enough. Allison concedes that the search warrant sufficiently described the place to be searched but argues that it did not give the officers explicit authority to seize "anything" particularly. We disagree.

544

In *Reaves v. State*,[2] our Supreme Court addressed the particularity requirement for warrants. As explained by the Court, warrants which contain residual clauses limiting the items to be seized to those relevant to the crimes identified in the warrant are sufficiently particular and do not authorize a general search in violation of the Fourth Amendment.[3] The Court stated that "[a]lthough a warrant cannot leave the determination of what articles fall within its description and are to be seized entirely to the judgment and opinion of the officer executing the warrant, the degree of specificity in the description is flexible and will vary with the circumstances involved."[4] Specifically, "the particularity requirement only demands that the executing officer be able to identify the property sought with reasonable certainty."[5]

In the instant case, the warrant provided, in pertinent part, as follows:

THERE IS NOW BEING CONCEALED CERTAIN PROPERTY, NAMELY: methamphetamine and other items related to the use of methamphetamine including needles, spoons, and baggies, stolen property, namely a stolen engine hoist and documentary materials indicating ownership and/or occupancy of said premises.

WHICH ARE EVIDENCE OF THE CRIME OF: possession of methamphetamines [sic] and theft by receiving stolen property. . . .

YOU ARE HEREBY COMMANDED IN THE NAME OF THE STATE OF GEORGIA to enter, search and seize, . . . the person, or any other person found on said premises, or property described above including all curtlidge [sic], outbuildings and vehicles that may reasonably be involved in the commission of the crime for which this search warrant is issued, and the premises or property

---

[2] 284 Ga. 181 (664 SE2d 211) (2008).

[3] Id. at 185-186 (2) (d). See also *Smith v. State*, 274 Ga. App. 106, 110 (3) (616 SE2d 868) (2005) (search warrant's general description of evidence of crimes listed therein was sufficient); *Maddox v. State*, 272 Ga. App. 440, 444 (2) (612 SE2d 484) (2005) (taken as a whole, search warrant was sufficiently specific where it authorized the seizure of all items contained within a specified motel room). But see *United States v. George*, 975 F2d 72, 75-77 (I) (A) (2d Cir. 1992) (authorization to search for evidence of any crime is overly broad and constitutes a general warrant, which is prohibited).

[4] (Citation and punctuation omitted.) *Reaves*, supra at 184 (2) (d).

[5] (Citation omitted.) Id. at 187 (2) (d). Compare *Daniels v. State*, 278 Ga. App. 332, 336 (1) (b) (629 SE2d 36) (2006) ("statement in the affidavit that 'the affiant or designee will determine what information constitutes evidence of the offenses' did not convert the search warrant into a general warrant") (punctuation omitted).

described above, and any other buildings located thereon
. . . and to make diligent search for the property.

We find that the warrant did not violate the particularity requirement.

Allison contends that the seizure of the shotgun, welder, and street sign was outside the scope of the warrant. Although the only item listed in the warrant was the engine joist, police officers are not compelled to overlook relevant evidence simply because it is not listed in the search warrant, and the fact that they seize items that are not listed does not convert the warrant into a general warrant.[6] Henderson testified at the suppression hearing that the welder was in plain view in the outside storage building. Henderson had information prior to the execution of the warrant that a welder had been stolen and testified that the officers actually confirmed that it was the stolen welder before seizing it because it was a large piece of equipment. The gun was also in plain view. Although it was covered with fabric, Henderson testified that he could tell it was a weapon and knew that Allison was a convicted felon.

"[O]fficers are not required to ignore that which is in plain view and readily observable."[7] Allison did not argue below that the seizure of the street sign exceeded the scope of the search warrant. Although we find that it did not because it, too, was in plain view, this argument is waived. "[I]nasmuch as we are a court for the correction of errors, we do not consider issues which were not raised below and ruled on by the trial court."[8] Accordingly, this enumerated error fails.

2. Allison challenges the sufficiency of the evidence as to his convictions. The crime of theft by receiving stolen property occurs when one "receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner."[9] Allison argues that there was no evidence that he knew the items at issue were stolen. While "[s]cienter is an essential element of the crime of theft by receiving stolen property, [it] may be proved by circumstantial evidence or inferred from circumstances which would excite the suspicions of an ordinarily prudent man."[10] We address each count separately.

---

[6] *Walsh v. State*, 236 Ga. App. 558, 560 (1) (b) (512 SE2d 408) (1999).

[7] (Citation omitted.) *Bryan v. State*, 137 Ga. App. 169, 170 (1) (D) (223 SE2d 219) (1976).

[8] (Citation omitted.) *Mann v. State*, 259 Ga. App. 553, 554 (2) (578 SE2d 238) (2003).

[9] OCGA § 16-8-7 (a).

[10] (Citation and punctuation omitted.) *Dunbar v. State*, 228 Ga. App. 104, 107 (1) (b) (491 SE2d 166) (1997).

(a) *Count 1 — Welder.* According to the testimony of Richard Alford, Allison saw the welder in the shop at R & B Construction on the day that Alford contacted Allison to work for him. After their dispute, Alford noticed that the welder was missing and reported it stolen. Alford testified that he could identify the machine based upon the color, size, design, and the stickers that were on the machine when it was taken from his shop. The police found the welder in the shed behind Allison's home. Ferguson testified that Allison stored items in the shed. Terry Bennett testified that he believed that all of the items in the shed belonged to Allison. Thompson testified that when she asked Allison about the welder, he said that he needed it and had gotten it from a former co-worker.

> Mere proof of possession, even though in the absence of an explanation, is not enough evidence to support a verdict of guilty of theft by receiving stolen property, but such possession, coupled with facts and circumstances from which knowledge may be inferred that the property so received was stolen is sufficient to support the verdict.[11]

Based on this testimony, the jury could infer that Allison knew or should have known that the welder was stolen because Alford testified that Allison had seen the welder at his shop; therefore, he knew that it belonged to Alford. But Allison told Thompson that he had obtained the welder from "another man" when she asked why it was in his shed. Therefore, the evidence was sufficient to enable a rational trier of fact to find Allison guilty on this count.

(b) *Count 2 — Shotgun.* Margie Abernathy testified that she knew Allison and Thompson because they helped her and her husband operate a food ministry. After the death of Abernathy's husband, Allison approached Abernathy about purchasing some of her husband's guns, but she was not ready to sell them. Abernathy noticed that the guns, which she kept in an outside storage building, were missing in December 2004, and she reported the theft to the police. Abernathy recalled that she received a phone call from an investigator asking her to come to identify a gun found at Allison's house. Abernathy testified that the gun found in Allison's shed was one of her husband's guns.

Officer Heath Migliore, who assisted in the execution of the search warrant, testified that Abernathy's son also identified the gun as one owned by his father. Migliore further testified that two of the other guns stolen from Abernathy were recovered from a gun shop.

---

[11] (Citations and punctuation omitted.) *Perry v. State*, 180 Ga. App. 273, 274 (349 SE2d 25) (1986).

An employee from the gun shop testified that Allison sold them two guns. The serial numbers on the two guns from the gun shop matched the serial numbers of two of the guns that Abernathy reported as stolen. The gun shop receipt was found during the execution of the search warrant. Even though there was no evidence that Allison attempted to pawn the weapon found on his property, the evidence sufficiently established that the seized gun belonged to Abernathy, and that Allison pawned two other guns, also owned by Abernathy. Based on the evidence presented, the jury could infer Allison's guilt.[12]

(c) *Count 3 — Saw.* Based on the evidence in the record that Allison had previously stolen items from Ferguson and that Allison sold Ferguson's saw to Barnett for $100, the jury could infer that Allison knew the saw was stolen.

(d) *Count 4 — Street Sign.* Larry Gregory of the GDOT testified that no individual, including Allison, had been given permission to take down or possess the street sign. Thompson testified that Allison told her he wanted to keep the street sign. This evidence was sufficient to enable a rational trier of fact to find Allison guilty of theft by receiving stolen property.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 5, 2009.

*James C. Bonner, Jr., Sheueli C. Wang*, for appellant.
*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.

---

[12] See generally *Leachman v. State*, 226 Ga. App. 98, 100 (485 SE2d 587) (1997) (evidence that defendant immediately disposed of guns at a financial loss to himself sufficiently established the guilty knowledge element of theft by receiving stolen property). See also *Dunbar*, supra ("[r]ecent possession of stolen property, in conjunction with other evidence, allows the jury to infer knowledge of the theft of the property") (citations omitted).