## A10A0970. BRYANT v. THE STATE.

(696 SE2d 439)

BLACKBURN, Judge.

Following a jury trial, Darrian Dewayne Bryant was convicted on one count of rape,[1] one count of false imprisonment,[2] three counts of aggravated assault,[3] and nine counts of burglary.[4] Bryant now appeals from the denial of his motion for a new trial, asserting that the trial court erred in: (1) denying his motion to sever the charges of rape, false imprisonment, aggravated assault, and the burglary charge related thereto from his trial on the remaining burglary charges; (2) denying his motion to suppress evidence obtained from a pair of shoes seized during a police search of his residence; (3) allowing a police detective to testify as to the reasons why Bryant became the primary suspect in their investigation; (4) allowing hearsay testimony as to a victim's prior statements concerning the aggravated assault on her; (5) instructing the jury on the use of prior consistent statements and on the impeachment of witnesses by their prior inconsistent statements; and (6) allowing the State to strike both of the black females from the jury pool. Bryant further claims that the evidence was insufficient to support his conviction on one of the aggravated assault charges. Discerning no error, we affirm.

Viewed in the light most favorable to the verdict, *Lawrence v. State*,[5] the record shows that this case arose out of a series of burglaries that occurred in and around the Lakebrooke Run sub-division in Gwinnett County, between June 2006 and March 2007. All of the burglaries shared certain similarities. Specifically, they all occurred during the day, when the home's occupants were away at work or school. Seven of the nine burglaries at issue in this case occurred either during a school vacation or after the date on which Bryant had dropped out of school. In each case, the intruder gained access to the residence by breaking in through a back window. The intruder typically ransacked the home, taking jewelry, money, DVDs, video games, and small electronic items, such as iPods, cameras, DVD players, and video-gaming systems.

During one of the burglaries, the homeowner's teenage daughter arrived home from school and discovered the intruder. The burglar placed a bag over the daughter's head, bound her hands, and dragged her from the hallway to the living room, where he raped her. The intruder then demanded money, and the daughter led him to the

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-5-41 (a).

[3] OCGA § 16-5-21 (a) (2).

[4] OCGA § 16-7-1 (a).

[5] *Lawrence v. State*, 289 Ga. App. 163 (657 SE2d 250) (2008).

master bedroom, where he ransacked drawers and an armoire, taking the jewelry he found there. He then dragged or pushed the daughter down the stairs on her back, and pushed her into one or more pieces of furniture on the lower level, before hitting her over the head with a glass vase.

Because of information obtained during their investigation of the burglaries, police had focused on Bryant as the primary suspect in those crimes. The lead police investigator testified, over objection by defense counsel, that while they originally had four suspects in the burglaries, they viewed Bryant as the primary suspect because: (i) he was a resident of Lakebrooke Run subdivision, and the burglar's ability to elude police on several occasions indicated an intimate knowledge of that neighborhood; (ii) the two burglarized homes outside of the subdivision were in close proximity to Bryant's house, and one of those homes was connected to the subdivision by a footpath that ran next to Bryant's house; (iii) police knew that Bryant had dropped out of school on February 14, 2007, and the burglaries began to escalate after that time; (iv) Bryant matched the physical description of the man who attacked the rape victim; (v) the rape victim had described her attacker as wearing a red shirt, and police had discovered a number of photographs posted on the internet of Bryant wearing a red shirt; and (vi) Bryant had made a statement to his school principal ("You will never catch me"), which was similar, if not identical, to a statement in a written note the burglar had left at one of the crime scenes.

Based on this information, police obtained a search warrant for Bryant's residence. That warrant authorized police to search for clothing similar to that the suspect had been seen wearing, as well as a number of specific items that had been stolen from the burglarized homes. When they executed that search warrant, police discovered many of the stolen items in Bryant's bedroom. Additionally, based on what they saw during that search, police obtained a second search warrant, authorizing them to search for items stolen from another of the burglarized homes. Police then executed that warrant and seized items stolen from that home.

During the execution of the first warrant, the police officer leading the search saw a pair of tennis shoes in Bryant's room that appeared to have blood stains on them. When a field test conducted by a crime scene investigator showed positive for the presence of blood, the officer seized the shoes, even though they were not specifically listed in the warrant. Later forensic tests showed that the blood on the shoes was that of the rape victim.

Following the discovery of the stolen items in Bryant's bedroom, police arrested him. During an interview at police headquarters, Bryant admitted to six of the nine burglaries at issue in this case. He

YALE LAW LIBRARY

458

explicitly denied, however, any involvement in the rape, assault, and false imprisonment of the teenage victim or in the burglary connected with those crimes.

Prior to trial, Bryant moved to suppress the blood evidence obtained from the tennis shoes seized during the execution of the first search warrant, arguing that the seizure of the shoes exceeded the scope of that warrant. The trial court denied that motion, finding that the seizure of the shoes was "contemplated within the search warrant[ ]." The trial court also denied Bryant's motion to sever his trial on the charges of rape, false imprisonment, aggravated assault, and the burglary charge related thereto from his trial on the remaining burglary charges.

The jury pool contained five black prospective jurors, two of whom were female. The State struck both of these women, and Bryant asserted a *Batson*[6] challenge to these strikes. The trial court denied the challenge, finding that the State had articulated a race-neutral reason for its decision to strike each of those individuals from the jury and that Bryant had failed to show that such reasons were pretextual.

Count 4 of the indictment alleged that Bryant committed aggravated assault against the rape victim by forcing her into unknown objects of furniture. When questioned at trial, however, the victim testified that while she remembered coming into contact with something after being pushed back down the stairs, she could not specifically recall if she came into contact with furniture. The trial court thereafter allowed the emergency room nurse who performed the rape examination of the victim to testify, over defense counsel's objections, to statements made to her by the victim. Reading from her written notes, made at the time of the examination, the nurse testified that the victim stated that the "perpetrator pulled her through the house and pushed her into the furniture." In response to questions from the prosecutor, the nurse testified that the victim's injuries were consistent with having been pushed into furniture.

The trial court instructed the jury as to the use of prior consistent statements by a witness as substantive evidence and the use of a witness's prior inconsistent statement for impeachment purposes. Defense counsel objected to each of these instructions, arguing that because there had been no attempt to impeach any witness, they were improper.

Following his conviction, Bryant filed a motion for a new trial, which was denied. Bryant now appeals from the trial court's order denying his new trial motion.

---

[6] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

1. In his first enumeration of error, Bryant argues that the trial court erred in denying his motion to sever the charges of rape, false imprisonment, aggravated assault, and the burglary charge related thereto from his trial on the remaining burglary charges. We disagree.

"On appeal, we will not disturb the trial court's ruling on a motion to sever unless it resulted from an abuse of discretion." (Punctuation omitted.) *Grant v. State*.[7] As a general rule, "[w]here the evidence of one crime would be admissible as a similar transaction in the trial of the other crime, or where the similarity of the offenses manifests a pattern, the trial court does not abuse its discretion in denying the motion for severance." (Punctuation omitted.) *Thrasher v. State*.[8] See also *Stewart v. State*[9] (joinder of offenses is proper where "they are so strikingly similar as to evidence a common motive, plan, scheme or bent of mind"). Additionally, "[w]here the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to severance in the interests of justice." (Punctuation omitted.) *Loyless v. State*.[10] Under such circumstances, a defendant is entitled to severance only if, "in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact [would] be [un]able to distinguish the evidence and apply the law intelligently as to each offense." (Punctuation omitted.) *Harmon v. State*.[11] See also *Grimes v. State*.[12]

Here, "[t]he charges against [Bryant] clearly show a recurring pattern of conduct suggesting a common scheme or modus operandi." *Greenway v. State*.[13] Each incident involved a daytime break-in to a residence in or next to the Lakebrooke Run subdivision, and in each case the perpetrator accessed the home through a back window. The intruder always took the same kinds of items, all of which were small enough to be carried away, and in all but two cases, the intruder ransacked the home. All of the burglaries occurred within an eight-month period, and seven of the nine occurred within a single, four-month period. Moreover, the aggravated assault, false imprisonment, and rape occurred during one of these burglaries, when the homeowner's daughter interrupted the burglary. (Notably,

---

[7] *Grant v. State*, 289 Ga. App. 230, 231 (1) (656 SE2d 873) (2008).

[8] *Thrasher v. State*, 261 Ga. App. 650, 652 (3) (583 SE2d 504) (2003).

[9] *Stewart v. State*, 277 Ga. 138, 140 (587 SE2d 602) (2003).

[10] *Loyless v. State*, 210 Ga. App. 693, 695 (3) (436 SE2d 814) (1993).

[11] *Harmon v. State*, 281 Ga. App. 35, 37 (2) (635 SE2d 348) (2006).

[12] *Grimes v. State*, 280 Ga. 363, 365 (3) (628 SE2d 580) (2006).

[13] *Greenway v. State*, 207 Ga. App. 511, 513 (2) (428 SE2d 415) (1993).

this was the only occasion where the intruder actually encountered a resident of the home being burgled.) Given that "the [burglaries] charged were so similar as to evidence a common plan or scheme and revealed an identical modus operandi," evidence of the other burglaries would have been admissible at the trial on the charges of rape, false imprisonment, aggravated assault, and the burglary charge related thereto. (Punctuation omitted.) *Muckle v. State*.[14] See also *Shabazz v. State*.[15] Thus, the trial court did not abuse its discretion in denying Bryant's motion for severance. See *Thrasher*, supra, 261 Ga. App. at 652 (3) (no abuse of discretion in refusing to sever burglary charges from burglary and rape charges arising out of separate incidents where the offenses "constituted a series of criminal acts closely connected by geography, time, and manner so as to constitute a scheme or plan of criminal conduct") (punctuation omitted); *Evans v. State*[16] (trial court properly refused to sever burglary charges from sexual assault charges where the burglary charges "were part and parcel of appellant's crime spree in the apartment complex where he raped and sodomized [a victim]").

2. We next address Bryant's claim that the trial court erred in denying his motion to suppress the DNA evidence obtained from his tennis shoes. "In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts." (Punctuation omitted.) *Lindsey v. State*.[17]

Bryant argues that the DNA evidence should have been suppressed because the seizure of his tennis shoes exceeded the scope of the search warrant. In executing lawful search warrants, however, "[o]fficers are not required to ignore that which is in plain view and readily observable." (Punctuation omitted.) *Allison v. State*.[18] Thus,

> an officer in the process of executing a lawful search warrant is authorized under OCGA § 17-5-21 (b) to seize any . . . item, other than private papers, which he has probable cause to consider tangible evidence of the commission of a crime, even though the property is not listed in the warrant.

---

[14] *Muckle v. State*, 202 Ga. App. 733 (1) (415 SE2d 299) (1992).
[15] *Shabazz v. State*, 265 Ga. App. 64, 65 (1) (592 SE2d 876) (2004).
[16] *Evans v. State*, 201 Ga. App. 20, 25 (1) (410 SE2d 146) (1991).
[17] *Lindsey v. State*, 287 Ga. App. 412 (651 SE2d 531) (2007).
[18] *Allison v. State*, 299 Ga. App. 542, 545 (1) (683 SE2d 104) (2009).

(Punctuation and footnote omitted.) *Phillips v. State.*[19] For such evidence to be admissible, "the State must show that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be seen and that the incriminating character of the evidence was immediately apparent." Id. The State met this burden at the hearing on the motion to suppress.

The evidence at the hearing showed that the officers were in Bryant's house pursuant to a lawfully issued search warrant and that, while conducting a lawful search, they saw the tennis shoes, which were in plain view. The officer leading the search, who had 22 years of experience, noticed an obvious stain on the shoes that appeared to him to be blood. He therefore had a field test performed on the shoes and, only after that test showed positive for blood, did the officer seize the shoes. Given these circumstances, "the trial court did not abuse its discretion in denying [Bryant's] motion to suppress evidence" obtained from the tennis shoes, even though they were not specifically listed in the search warrant. *Phillips*, supra, 269 Ga. App. at 623 (2). See also *Lighten v. State.*[20]

3. At trial, the lead detective testified as to the facts that led police to view Bryant as the primary suspect in the series of burglaries at issue. He further testified that it was these facts that led police to seek a search warrant for Bryant's residence. Trial counsel objected to this testimony, arguing that it constituted an opinion as to Bryant's guilt. The trial court overruled that objection and Bryant now challenges that ruling.

Contrary to Bryant's assertions, the transcript shows that the detective never offered opinion testimony; rather, he merely testified as to objective facts learned by police during the course of their investigation, and explained that those facts led police to seek a search warrant for Bryant's residence. Given that this testimony did not express an opinion as to the strength of the evidence, the credibility of other witnesses, or the guilt of the defendant, the trial court did not err in allowing it. See *Hayes v. State*[21] ("[t]he testimony about which [defendant] complain[ed] was not objectionable as such did not constitute a statement of opinion either as to proof or as to guilt"); *Greene v. State.*[22]

More importantly, all of the facts testified to by the detective were already in evidence, having been previously testified to by other witnesses.[23] Thus, pretermitting whether the trial court erred in

---

[19] *Phillips v. State*, 269 Ga. App. 619, 623 (2) (604 SE2d 520) (2004).

[20] *Lighten v. State*, 259 Ga. App. 280, 285 (3) (576 SE2d 658) (2003).

[21] *Hayes v. State*, 236 Ga. App. 617, 620 (4) (a) (512 SE2d 294) (1999).

[22] *Greene v. State*, 295 Ga. App. 803, 811 (8) (b) (673 SE2d 292) (2009).

[23] Specifically, the dates of the burglaries and the proximity of the burglarized homes to

allowing the detective's testimony, such error was harmless, because that testimony was cumulative of other admissible evidence. *Curtis v. State*.[24]

4. Bryant further asserts that the trial court erred in allowing the nurse who conducted the sexual assault examination of the victim to testify as to statements the victim made to her. Specifically, Bryant objects to the trial court's decision to allow the nurse's testimony that the victim stated that her assailant had "pushed her into the furniture."

Despite Bryant's assertions to the contrary, the nurse's testimony as to the victim's statement was properly admitted under OCGA § 24-3-4, which provides:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence.

Here, the victim's statement to the nurse was given to explain both the nature and origin of some of her injuries. Accordingly, that statement "was pertinent to the diagnosis and treatment of the victim, and, therefore, was admissible." (Punctuation omitted.) *Davis v. State*.[25] See also *Opio v. State*.[26]

5. Nor do we find any merit in Bryant's claim that the trial court erred in instructing the jury on impeachment of a witness by a prior inconsistent statement and the use of a witness's prior consistent statement as substantive evidence. Bryant argues that such instructions were improper because there was no attempt to impeach any of the witnesses in the case. Regardless of whether the trial court's instructions were proper, however, Bryant has failed to demonstrate that he suffered any prejudice as a result of those instructions.

Bryant argues that the instructions prejudiced him because they allowed the jury to consider the rape victim's statement to the nurse as substantive evidence. As noted supra in Division 4, however, evidence of that statement was properly admitted under an excep-

---

Bryant's residence had been established by the homeowners; the physical description of the perpetrator had been given by the rape victim; the date on which Bryant dropped out of school and the statement he made to his high school principal had been established by the principal's testimony; and the contents of the note left at the scene of one of the burglaries had been testified to by the homeowner.

[24] *Curtis v. State*, 282 Ga. App. 322, 326 (2) (d) (638 SE2d 773) (2006).

[25] *Davis v. State*, 168 Ga. App. 272, 274 (5) (308 SE2d 602) (1983).

[26] *Opio v. State*, 283 Ga. App. 894, 899 (1) (d) (ii) (642 SE2d 906) (2007).

tion to the hearsay rule. Thus, regardless of whether or not it could be viewed as a prior consistent or inconsistent statement, evidence of the victim's statement was properly admitted as substantive evidence. See *Adamson v. Gen. Elec.*[27] (evidence admitted pursuant to a hearsay exception may be considered as substantive evidence); *Ledford v. State.*[28]

6. We next address whether the trial court erred in rejecting Bryant's *Batson* challenge to the State's use of peremptory strikes against the only two potential jurors who were black females.

> The trial court follows a three-step test for evaluating challenges to peremptory strikes on *Batson* grounds: First, the opponent of a peremptory challenge must make a prima facie showing of racial discrimination. Second, the burden of production then shifts to the proponent of the strike to give a race-neutral reason for the strike. Third, after hearing from the opponent of the strike and considering the totality of the circumstances, the trial court then decides whether the opponent of the strike carried his burden of proving [that] discriminatory intent in fact motivated the strike.

(Punctuation omitted.) *Allen v. State.*[29]

"In reviewing the trial court's disposition of the motion, we must bear in mind that . . . [t]he trial court's decision rests largely upon assessment of the prosecutor's state of mind and credibility; it therefore lies peculiarly within a trial judge's province." (Punctuation omitted.) *Jackson v. State.*[30] Accordingly, "[t]he trial court's findings as to whether the opponent of the strike has met the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous." (Punctuation omitted.) *Rakestrau v. State.*[31]

Here, "[t]he threshold issue of whether [Bryant] established a prima facie case of discrimination is moot because the [S]tate offered purportedly race-neutral reasons for its strikes and the trial court ruled on the ultimate issue of purposeful discrimination." *Bass v. State.*[32] Thus, we need only determine whether, in light of the State's

---

[27] *Adamson v. Gen. Elec.*, 303 Ga. App. 741, 742 (1) (694 SE2d 363) (2010).

[28] *Ledford v. State*, 239 Ga. App. 237, 238 (520 SE2d 225) (1999) (physical precedent only).

[29] *Allen v. State*, 299 Ga. App. 201, 205 (2) (683 SE2d 343) (2009).

[30] *Jackson v. State*, 220 Ga. App. 98, 98-99 (469 SE2d 264) (1996).

[31] *Rakestrau v. State*, 278 Ga. 872, 874 (3) (608 SE2d 216) (2005).

[32] *Bass v. State*, 271 Ga. App. 228, 231 (4) (609 SE2d 386) (2005).

proffered reasons for striking the jurors in question, the trial court erred in finding that Bryant had failed to show discriminatory intent. *Allen*, supra, 299 Ga. App. at 205 (2).

The prosecutor explained that he struck the first black female because she had a son who was approximately Bryant's age and who had experienced similar problems with school, discipline, and drugs as Bryant. She was the only member of the panel who had a son close to Bryant's age and, given this and her son's other similarities with Bryant, the prosecutor feared the juror would be unduly sympathetic toward Bryant. The State struck the second juror because she was a teacher, and the prosecutor routinely struck all school teachers from the panel.

On appeal, Bryant concedes that the strike of the teacher was not motivated by bias, but argues that the trial court erred in finding that the State's strike of the other black female was not motivated by race or gender bias. In support of this argument, Bryant points to the fact that the State did not strike a white female juror whom he alleges was similarly situated to the black female in question. See *Nelson v. State*[33] ("the opponent of the strike may carry [his] burden of persuasion by showing that similarly-situated members of another race were seated on the jury") (punctuation omitted). Specifically, Bryant argues that the white juror had two sons, one of whom had been accused of rape and one of whom had served prison time for shooting someone. Given that these crimes were identical to the most serious crimes with which Bryant was charged, he argues that the white juror was similarly situated to the black juror, and would have also been sympathetically predisposed toward Bryant. This argument, however, misrepresents the responses of the juror who was seated.

The white juror testified that her stepsons were currently aged 31 and 33 and were successful adults. When he was a teenager, the younger son had been accused of rape, but his accuser had recanted the allegations before charges were ever filed. The older son had served a prison term, but did so after he pled guilty to shooting someone. He had been released from prison and, in the words of his stepmother had "grown up . . . and really taken ownership" of his conduct and his life. Thus, this juror had two adult stepsons who had overcome earlier problems from their youth; the juror who was struck had a teenage son currently experiencing problems similar to those experienced by Bryant. These differences "were sufficient to differentiate the [seated juror] from the one who was struck and to support the trial court's conclusion that [the seated juror was] not so

---

[33] *Nelson v. State*, 289 Ga. App. 326, 331 (2) (657 SE2d 263) (2008).

similar to the one who was struck that the force of the facially race-neutral explanation[ ] was diminished." *Freeman v. State*.[34] See also *Jones v. State*.[35] Accordingly, we find no error in the trial court's rejection of Bryant's *Batson* challenge.

7. Bryant also asserts that the evidence was insufficient to sustain his conviction on Count 4 of the indictment, which alleged that Bryant committed aggravated assault against the rape victim by forcing her into unknown objects of furniture. Specifically, Bryant argues that because the victim testified that she could not remember if she had been pushed into furniture, the jury could not convict him of that count. We disagree.

In determining the sufficiency of the evidence to sustain a criminal conviction, "we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation omitted.) *Grant*, supra, 289 Ga. App. at 233 (3). As noted supra, in Division 4, the trial court properly admitted the victim's statement to the emergency room nurse, that the assailant had pushed the victim into furniture. Moreover, the nurse testified that some of the injuries sustained by the victim were consistent with having been pushed into furniture. And, the State introduced photographic evidence of the crime scene, which showed furniture knocked over and in disarray. This evidence was sufficient to allow the jury to find that the rape victim had been pushed into furniture as she was pushed and dragged through her home while blindfolded. See OCGA § 24-4-8 ("[t]he testimony of a single witness is generally sufficient to establish a fact"); *Culver v. State*.[36]

For the reasons set forth above, we affirm the trial court's denial of Bryant's motion for a new trial.

*Judgment affirmed. Barnes, P. J., and Bernes, J., concur.*

DECIDED JUNE 17, 2010 — 

*David L. Whitman*, for appellant.
*Daniel J. Porter, District Attorney, Christa L. Kirk, Assistant District Attorney*, for appellee.

---

[34] *Freeman v. State*, 268 Ga. 181, 183 (1) (486 SE2d 161) (1997).
[35] *Jones v. State*, 240 Ga. App. 339, 342 (1) (523 SE2d 402) (1999).
[36] *Culver v. State*, 290 Ga. App. 321, 322 (659 SE2d 390) (2008).