**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 28, 2012**

# In the Court of Appeals of Georgia

A12A0987. CALHOUN v. THE STATE.

RAY, Judge.

After a jury trial, Preston Calhoun was convicted of four counts of aggravated assault and one count each of armed robbery and false imprisonment arising from an armed robbery of a Dollar General store and an attempted robbery of a Cato women's clothing store about two weeks later. Appellant appeals the denial of his motion for new trial, arguing that the trial court erred in denying his motion to sever and his motions for directed verdict on two counts. Appellant also argues that the trial court erred in charging the jury on aggravated assault. Because we find that the trial court erred in denying his motion for a directed verdict as to aggravated assault, we reverse in part and affirm in part.

Viewed in the proper light,[1] the evidence adduced at trial shows that on November 19, 2007, appellant's co-defendant, Roslynn Ford-Calhoun, entered a Dollar General store in Stockbridge and walked around the store, pretending to shop while talking on her cell phone. Ford-Calhoun then informed appellant by cell phone that it was safe for him to enter the store. Appellant, who was wearing large sunglasses, then entered the store, showed his gun to the cashier, and said "you know what it is. Give it up." Appellant snatched money from the cashier's hands and then demanded that she "give [him] the till, all the safe[,] and your deposit." When the cashier did not act quickly enough, appellant pointed the gun at her stomach, and demanded that she give him money from the store's safe. Appellant then took some money from the safe and fled the store. Once outside, appellant noticed the store's manager, Terrance Quarterman, and went over to him, aimed his gun at Quarterman's head, and demanded that he hand over the store's bank deposit. When Rick Kurtz drove into the store's parking lot, he noticed Quarterman engaged in a confrontation with appellant and he came over to provide assistance. Appellant turned to Kurtz, and

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Bryant v. State*, 304 Ga. App. 456, 456 (696 SE2d 439) (2010).

2

said "[t]urn around [and] I'll blow your . . . head off." Appellant then fled the scene and got into a black Cadillac driven by Ford-Calhoun.

Approximately two weeks later, on December 4, 2007, Ford-Calhoun entered Cato, a women's clothing store in McDonough. Ford-Calhoun began to ask the staff about purchasing an item when appellant, wearing large sunglasses, entered the store. Appellant then ran up to Cathy Johnson, the store's employee, displayed his gun, and demanded money from her. When Johnson was unable to access the register, appellant then forced the manager, Kimtoria Campbell, away from the front door and back to the cash register. When neither Johnson nor Campbell could access the safe or the register, Ford-Calhoun called out to appellant to abandon the robbery, and appellant and Ford-Calhoun escaped in a black Cadillac.

1. Appellant contends that the trial court erred in denying his motion to sever counts related to the Dollar General robbery from those counts related to the attempted robbery of the Cato store, arguing that the offenses were not sufficiently similar. We disagree.

On appeal, we review the trial court's ruling on a motion to sever under the abuse of discretion standard.[2] It is well-settled that a defendant has an absolute right

[2] *Bryant,* supra at 459 (1).

3

to sever if multiple charges against him are joined solely because they are of the same or similar character.[3] However, "offenses have not been joined solely because they are of the same or similar character when evidence of one offense can be admitted upon the trial of another, i.e., when they are so strikingly similar as to evidence a common motive, scheme or bent of mind."[4] When considering a motion to sever, the trial court "must consider the number of offenses charged, the complexity of the charges, and the complexity of the evidence and determine whether the jury will be able to fairly and intelligently parse the evidence and apply the law with regard to each charge."[5]

Instead of focusing on the similarities between the two incidents, appellant improperly focuses on the differences, including that appellant seemed to be more informed about the store's procedures involving money in the Dollar General robbery than in the Cato robbery, that Ford-Calhoun ignored the Dollar General employees but spoke to the employees of Cato, and that appellant used harsher, more threatening

---

[3] *Green v. State*, 291 Ga. 287, 289 (2) (728 SE2d 668) (2012)

[4] (Citation and punctuation omitted; emphasis omitted.) Id.

[5] (Citations and punctuation omitted.) *Willis v. State*, 316 Ga. App. 258, 262-263 (3) (728 SE2d 857) (2012).

language in the Dollar General incident. Here, although the crimes in the present case occurred at different times and different locations and involved different victims, they were connected by more than just their similar character. The charges against appellant clearly show a recurring pattern of conduct suggesting a common scheme or modus operandi.[6] Victims of both crimes either identified appellant from a photo lineup and accurately described him as a black male, slightly over six feet tall. Victims of both crimes also described his co-defendant, Ford-Calhoun, as a black woman with braids in her hair. Both crimes involved Ford-Calhoun and appellant working together as a team to rob a store. Both crimes involved Ford-Calhoun pretending to shop in each store prior to appellant entering the store and brandishing his gun and demanding money from the store's employees before they both escaped in a black Cadillac. "Moreover, this case was not so complex as to impair the jury's ability to distinguish the evidence and apply the law intelligently as to each offense."[7] Under these circumstances, we find no abuse of discretion.

---

[6] *Bryant*, supra. at 459 (1).

[7] (Citations and punctuation omitted.) *Boatright v. State*, 308 Ga. App. 266, 274 (2) (707 SE2d 158) (2011).

2. Appellant argues that the trial court erred in denying his motions for directed verdict on Count 3, the charge for aggravated assault against Rick Kurtz, and Count 6, the charge for the false imprisonment of Kimtoria Campbell.

A directed verdict is appropriate when "there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or not guilty as to the entire offense or to some particular count or offense."[8] When reviewing a denial of a motion for a directed verdict, we apply the same test as when reviewing a challenge to the sufficiency of the evidence, i.e., "whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense."[9] The jury's verdict will be upheld as long as there is some competent evidence to support each fact necessary to make out the State's case.[10]

---

[8] (Punctuation and footnote omitted.) *Floyd v. State*, 251 Ga. App. 346, 347 (1) (553 SE2d 658) (2001).

[9] (Footnote omitted.) *Badie v. State*, __ Ga. App. __ (1) (732 SE2d 553) (2012). See *Jackson*, supra.

[10] *Floyd*, supra.

(a) Appellant argues, and the State agrees, that because of the specific language used in Count 3 of the indictment, there was insufficient evidence to convict him of aggravated assault against Kurtz. We agree.

Count 3 of the indictment charged appellant with aggravated assault because appellant "unlawfully made an assault upon the person of Rick Kurtz, with a gun, a deadly weapon, *by pointing a gun at Rick Kurtz in a threatening manner*."[11] The law is clear that where an indictment charges a defendant with committing an offense in a particular manner,

> the proof must show it so, or there will be a variance. No averment in an indictment can be rejected as surplusage which is descriptive either of the offense or the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance.[12]

---

[11] (Emphasis supplied.)

[12] (Punctuation and footnote omitted.) *Floyd*, supra at 348 (1). Accord *Petty v. Smith*, 279 Ga. 273, 277-278 (612 SE2d 276) (2005) (defendant could not have been convicted for aggravated assault when indictment's language specified that the assault was made "with a shotgun, a deadly weapon," and the evidence showed defendant could have been convicted of aggravated assault for beating the victim or party to the crime, but was not).

7

As stated in Division 1, the evidence adduced at trial, when viewed in the light most favorable to the prosecution, showed that when Kurtz drove up to the Dollar General store, he noticed the manager in a confrontation with appellant. When Kurtz approached to check on the manager, appellant saw him and said "[t]urn around [and] I'll blow your . . . head off." Although Kurtz testified that he saw appellant holding a gun and that appellant verbally threatened him, he did not testify that the gun had been pointed at him. Because we agree that the State did not prove the act charged in Count 3, that appellant pointed a gun at Kurtz, we find that the trial court erred in denying appellant's motion for a directed verdict and reverse appellant's conviction on this charge.

(b) Appellant next contends that the evidence adduced at trial was insufficient to support his conviction for the false imprisonment of Kimtoria Campbell, and therefore the trial court erred in denying his motion for a directed verdict as to that count. We disagree and affirm.

A defendant can be convicted for false imprisonment when "in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."[13]

---

[13] OCGA § 16-5-41 (a).

The testimony adduced at trial regarding the charge shows that Campbell, the manager of the Cato's who was present during the robbery, began running towards the door of the store as soon as she understood that the store was being robbed, but stopped when she saw that Ford-Calhoun was "standing guard . . . five feet from the door." Campbell testified that she did not feel free to leave because Ford-Calhoun "had her hand in her pocket. I didn't know whether she had a gun or not." Appellant, who had first demanded money from the employee at the cash register at gunpoint, then demanded that Campbell "get back up there" so that she could assist the other employee in opening the cash register. While Campbell and the other employee struggled to open the store's safe, the other employee "kept pleading and begging [appellant] to let [the other employee] go to the back room to get the key, and he would not let her move." We find this evidence sufficient to support the jury's finding that appellant is guilty beyond a reasonable doubt of falsely imprisoning Campbell.[14] Accordingly, the trial court did not err in denying appellant's motion for a directed verdict as to the false imprisonment charge.

---

[14] See *Taylor v. State*, __ Ga. App. __ (1) (Case No. A12A1230, decided on October 19, 2012) (evidence was sufficient to support a false imprisonment conviction when, during the course of a robbery of a cell phone store, defendant told two customers to go to the back of the store and lie down on the floor and forced employee of the store to give him money in the cash register and then go lie down).

3. Appellant contends that the trial court erred in expanding the manner by which the jury could convict appellant for aggravated assault on Kurtz beyond the method alleged in the indictment. Based upon our holding in Division 2 (a), we find this enumeration to be moot.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Branch, J., concur.*