**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 4, 2014**

# In the Court of Appeals of Georgia

A14A0774. RAY v. THE STATE.

RAY, Judge.

Following a jury trial, Sylvester Ray was convicted on three counts of rape (OCGA § 16-6-1) (a) (1)), three counts of aggravated assault (OCGA § 16-5-21), two counts of kidnapping with bodily injury (OCGA § 16-5-40), and one count of aggravated sodomy (OCGA § 16-6-2).[1] Ray now appeals from his convictions and the denial of his motion for a new trial, contending that the trial court erred in denying his motion to sever the charges for trial. Finding no error, we affirm.

Viewed in the light most favorable to support the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that this case

---

[1] Ray was acquitted on another count of aggravated assault and one count of armed robbery, and the trial court directed a verdict on two other counts of aggravated assault.

arose out of three sexual assaults against three different women that occurred in DeKalb County between November 2002 and April 2003. As set forth below, all of the sexual assaults shared certain similarities.

The first sexual assault occurred on November 23, 2002. The 28-year-old victim, L.H., was leaving a bar that night when Ray, whom she did not know, offered to take her home. On the way, Ray told L. H. that he had to stop by his sister's house to check on her. The house was completely dark when Ray turned his vehicle into the driveway and pulled into the garage. After parking the car and turning off the ignition, Ray slapped his arm across L. H.'s neck and told her not to scream or he would kill her. As Ray was taking off L.H.'s clothes, L. H. observed a gun in the console of the car. After raping L.H., Ray got out of the car to use the bathroom, and L. H. fled on foot. As she ran, L.H. heard the sound of a gun shooting. She was able to flag down a passing police car, and the officer took her to the hospital for a sexual assault examination. The swabs taken from the examination revealed the presence of sperm, and a subsequent analysis of the sperm showed that it contained DNA which matched Ray's DNA profile.

The second sexual assault occurred on April 17, 2003. That morning, the 38-year-old victim, C. J., had just gotten out of her vehicle in the parking lot of a strip

2

mall when Ray came up behind her, put a gun in her side, and ordered her to go back to her vehicle. C. J. did not know Ray and had never seen him before. Ray told C. J. to remove her belt, which he then placed around her neck and used to pull her back to her vehicle. Once they were inside the vehicle, Ray directed C. J. to drive to an office park next door, where he raped her. Ray then ordered C. J. to drive to a nearby junkyard, where he robbed her, raped her again, and forced her to perform oral sex on him. When Ray ran away, C. J. got back inside her vehicle and drove home. Later that day, C. J. went to the hospital for a sexual assault examination. The swabs taken from the examination revealed the presence of sperm, and a subsequent analysis of the sperm showed that it contained DNA which matched Ray's DNA profile.

The third sexual assault occurred on April 20, 2003. That night, the 23-year-old victim, M. C., had gotten out of her car in a parking lot and was walking toward a sports bar when Ray called her over to his vehicle. M. C. did not know Ray and had never seen him before. When she leaned down to look into his passenger-side window, Ray pointed a gun at her and ordered her to get in his car. Ray then drove her to a nearby park, where he ordered her out of the vehicle, cut her panties off with a knife, and raped her. After the sexual assault, Ray got back into his vehicle and drove away. After reporting the incident to the police, C. M. was taken to the hospital

to undergo a sexual assault examination. The swabs taken from the examination revealed the presence of sperm, and a subsequent analysis of the sperm showed that it contained DNA which matched Ray's DNA profile.

Ray argues that the trial court erred in denying his motion to sever because the separate offenses were merely similar in character, and that the joint disposition of the unrelated offenses and the confusion of law and evidence regarding the charges created a "smear effect," depriving him of a fair determination of his guilt or innocence as to each of the offenses. We disagree.

On appeal, we review the trial court's ruling on a motion to sever offenses under the abuse of discretion standard. *Bryant v. State*, 304 Ga. App. 456, 459 (1) (696 SE2d 439) (2010).

As a general rule, where the evidence of the other crimes would be admissible as similar transaction evidence at trial, "or where the similarity of the offenses manifests a pattern, the trial court does not abuse its discretion in denying the motion for severance." (Citation and punctuation omitted.) Id. Although a defendant has a right to sever multiple offenses if they are joined solely because they are of a similar character, "offenses have not been joined *solely* because they are of the same or similar character when evidence of one offense can be admitted upon the trial of

4

another, i.e., when they are so strikingly similar as to evidence a common motive, scheme or bent of mind." (Citation and punctuation omitted; emphasis in original.) *Green v. State*, 291 Ga. 287, 289 (2) (728 SE2d 668) (2012). Additionally, "where the modus operandi of the perpetrator is so strikingly alike, that the totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to severance in the interests of justice." (Citation and punctuation omitted.) *Bryant*, supra. Under such circumstances, a defendant is entitled to severance only if, "in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact would be unable to distinguish the evidence and apply the law intelligently as to each offense." (Citations and punctuation omitted.) Id.

Instead of focusing on the similarities between the three incidents, Ray improperly focuses on the differences. However, independent acts "do[ ] not have to mirror every detail of the crime[s] charged, and may reflect only a portion of the acts that establish the crimes being tried." (Citation and punctuation omitted.) *Green*, supra. Here, although the crimes in the present case occurred at different times and different locations and involved different victims, they were connected by more than just their similar character. The charges against appellant clearly show a recurring

5

pattern of conduct suggesting a common scheme or modus operandi. *Green*, supra at 290 (2). The victims of the three sexual assaults were adult women between the ages of 23 and 38 years old, none of the women knew Ray, all three incidents occurred in DeKalb County within 6 months of each other, each victim was taken by vehicle to a secluded location before they were raped, all three incidents involved a handgun, and semen matching Ray's DNA profile was found on each victim.

In this case, the trial court properly found that each incident would be admissible as a similar transaction to show a common motive, plan, scheme, and bent of mind. "Moreover, this case was not so complex as to impair the jury's ability to distinguish the evidence and apply the law intelligently as to each offense." (Citations and punctuation omitted.) *Boatright v. State*, 308 Ga. App. 266, 274 (2) (707 SE2d 158) (2011). Consequently, we find that the trial court did not abuse its discretion in denying the motion to sever the offenses. See *Calhoun v. State*, 318 Ga. App. 835, 836, 836-837 (1) (734 SE2d 809) (2012).

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*