## A08A2134. BATTISE v. THE STATE.
(673 SE2d 262)

MILLER, Chief Judge.

A Chatham County jury convicted Jervous Battise of burglary in violation of OCGA § 16-7-1. Battise appeals from the trial court's order denying his motion for a new trial, arguing that (1) the trial court erred in sentencing him under OCGA § 17-10-7 (c) and (2) he was denied effective assistance of counsel at trial. Discerning no error, we affirm.

The record shows that on September 30, 2004, Jeffrey Gadson was staying at his girlfriend's apartment in the Westlake apartment complex in Chatham County. Around 10:00 p.m., Gadson and his son went downstairs and got into Gadson's car to drive to the grocery store. As Gadson was driving away, he noticed a number of men standing around the mailboxes. Gadson recognized one of them as a man he knew as Jervous. Although they were not close acquain-

---

tances, Gadson had known Jervous for years from playing basketball. Gadson also had some older friends who attended high school with Jervous.

On the way to the store, Gadson realized that he had forgotten his money and returned to the apartment complex. Gadson parked his car, and he and his son raced each other up the stairs to the apartment. When Gadson reached the top of the stairs, he saw a man standing in the doorway to his girlfriend's apartment. The door had been kicked in. The man in the doorway said "he's coming, he's coming," and started running. As Gadson moved closer to the apartment, another man ran out, looked at Gadson, and ran down the stairs. Gadson recognized the second intruder as Jervous. He saw Jervous face-to-face, and nothing was concealing Jervous' face.

Gadson ran after the intruders, with his son following. Gadson caught up with the first man, who had been standing lookout in the apartment door, and as he put his hand on the man's shoulder to tackle him, the man yelled out, "Jervous, Jervous, he got me. . . ." At that point, Gadson heard several gunshots. Concerned with his son's safety and his own, Gadson let the man go. Gadson and his son returned to the apartment, and Gadson called the police. Gadson discovered that the intruders had thrown some things out of a closet and had rummaged through some clothes in the bedroom. The intruders also took about $20. When the police responded to the scene, Gadson told the officer that he knew one of the intruders was Jervous.[1]

The following day, Detective E.A. Riley interviewed Gadson at the police station. Gadson met with Riley again on October 6, 2004, and, in the meantime, Gadson had conducted his own investigation to ascertain Jervous' last name. Riley typed Battise's name into a computer program that allows the police to access records through the jail, and Battise's picture popped up. Gadson immediately identified Battise as the intruder he had recognized.

Battise was indicted on charges of aggravated assault, possession of a firearm during the commission of a felony, burglary, and possession of a firearm by a convicted felon. The indictment also included a recidivist count. Following a jury trial, Battise was convicted of burglary and acquitted of the remaining charges. Battise filed a motion for new trial, which was denied, and this appeal followed.

1. Pursuant to OCGA § 17-10-7 (c), Battise was sentenced to twenty years, with ten to serve in prison without parole and the re-

---

[1] The police report includes the name "Jarvis" instead of "Jervous" because the officer did not know the correct spelling.

mainder of the sentence suspended on the condition that Battise not violate any laws of any governmental unit. Battise claims that the trial court erred in sentencing him under OCGA § 17-10-7 (c), because the State failed to provide him with notice of one of the three prior felony convictions it relied upon when it requested sentencing under OCGA § 17-10-7 (c). We disagree.

The recidivist count of Battise's indictment listed four specific indictment numbers and alleged that Battise had two prior convictions for robbery and two convictions for theft by receiving. Subsequently, the State served Battise with a Notice of Intent to Prosecute Defendant as a Recidivist and a Notice of Intent to Offer Evidence in Aggravation of Punishment (the "Notices"), each of which enumerated these same four convictions.

In the second phase of Battise's trial on the count for possession of a firearm by a convicted felon, the State entered into evidence Battise's two robbery convictions. During sentencing, the State asked the trial court to consider the robbery convictions "for purposes of aggravation only." In support of its request that the trial court sentence Battise under OCGA § 17-10-7 (c), the State introduced into evidence three other prior convictions, one of which, a conviction for criminal attempt to commit theft by taking, was not listed in the indictment or the Notices. Based on these three convictions, the trial court imposed its sentence under OCGA § 17-10-7 (c).

OCGA § 17-16-4 (a) (5) mandates that, "no later than ten days prior to trial, or at such time as the court orders but in no event later than the beginning of the trial," the prosecution must "provide the defendant with notice of any evidence in aggravation of punishment that the state intends to introduce in sentencing." A criminal defendant may be sentenced under OCGA § 17-10-7 (c) only if the State has provided advance notice of three prior convictions. *Mitchell v. State*, 202 Ga. App. 100, 101 (2) (413 SE2d 517) (1991) (interpreting OCGA § 17-10-2 (a), which formerly contained the notice requirement). Battise argues that his prior conviction for criminal attempt to commit theft by taking could not be used to support his sentence under OCGA § 17-10-7 (c) because the State failed to provide notice that it would rely on that conviction in sentencing. Because Battise "never objected [to admission of the conviction] on the ground that he had received no notice . . . any issue concerning lack of notice has been waived." (Citations and punctuation omitted.) *Swain v. State*, 268 Ga. App. 135, 138 (2) (601 SE2d 491) (2004); see also *Burruss v. State*, 242 Ga. App. 241, 243 (2) (529 SE2d 375) (2000).

Even if the objection had not been waived, Battise could not successfully challenge his recidivist sentence. The State proved all four of the convictions that were listed in the indictment and

Notices. Although the trial court stated that it was not relying on Battise's robbery convictions in imposing a sentence under OCGA § 17-10-7 (c), there was no reason those convictions could not be used to support Battise's sentence. It is true that our prior cases have held that the same prior conviction cannot be used to support both a conviction for possession of a firearm by a convicted felon and a sentence under OCGA § 17-10-7. *Wyche v. State*, 291 Ga. App. 165, 167 (3) (661 SE2d 226) (2008). Here, however, Battise was acquitted of the charge of possession of a firearm by a convicted felon, and his two robbery convictions therefore remained available to support his sentence under OCGA § 17-10-7 (c). *Walker v. Hale*, 283 Ga. 131, 133 (1) (657 SE2d 227) (2008). "[I]t is well-established that a trial court's ruling will be affirmed if it is right for any reason." (Citation and punctuation omitted.) *Holland v. State*, 232 Ga. App. 284, 285 (2) (501 SE2d 829) (1998). Applying this principle, we would affirm the trial court's sentence regardless of whether Battise received adequate notice of the State's intent to rely on his conviction for criminal attempt at theft by taking.

2. Battise next claims that he was denied effective assistance of counsel at trial. We disagree.

> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficiency so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. The trial court's findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous.

(Citations and punctuation omitted.) *Harvey v. State*, 284 Ga. 8, 10 (4) (660 SE2d 528) (2008).

(a) Battise argues that his trial counsel was ineffective for failing to object when the State introduced evidence of his prior conviction for criminal attempt to commit theft by taking during sentencing. For the reasons set forth in Division 1, supra, we disagree.

(b) Battise claims that his trial counsel was ineffective for failing to request that the trial court instruct the jury on eyewitness identification. Assuming arguendo that trial counsel's failure to request such an instruction was deficient, Battise cannot show that his trial counsel's omission caused prejudice. The trial court charged the jury on the presumption of innocence, reasonable doubt, burden of proof, credibility of witnesses, and impeachment of witnesses.

YALE LAW LIBRARY

"Thus, the jury was instructed on the general principles of law underlying a defense of misidentification." *Springs v. Seese*, 274 Ga. 659, 662 (3) (558 SE2d 710) (2002). In addition, in giving an instruction on Battise's alibi defense,[2] the trial court charged the jury, inter alia,

> that the defendant contends that he was not present at the scene of the alleged offense at the time of its commission. . . . Presence of the defendant at the scene of the crime alleged is an essential element of the crimes set forth in this indictment and the burden of proof rests upon the State to prove such beyond a reasonable doubt.

Finally, the trial court instructed the jury that it should convict Battise of the crimes charged only if it found "beyond a reasonable doubt that [Battise], in Chatham County, Georgia, did on or about September thirty, two thousand four commit the offense charged in the particular count of the indictment. . . ." Under the circumstances and in light of the charge as a whole, we find no reasonable probability that the outcome of the trial would have been different had a charge on eyewitness identification been given. Id.; *Williams v. State*, 273 Ga. App. 321, 323 (615 SE2d 160) (2005); see also *Johnson v. State*, 277 Ga. App. 41, 45-46 (4) (625 SE2d 411) (2005).

(c) Gadson testified at trial that when Detective Riley showed him Battise's picture, he had "no doubt" that Battise was the person who ran out of his girlfriend's apartment on the night of the incident. Riley testified that there is no need to conduct a line-up if the victim is certain about his or her identification of the perpetrator. Battise argues that his trial counsel was ineffective for failing to challenge this testimony by cross-examining the witnesses with expert studies showing that no correlation exists between a witness's confidence in his or her identification and the accuracy of the identification.

At the hearing on the motion for a new trial, Battise's trial counsel testified that he did not believe he should have cross-examined the witnesses in this manner because he had effectively cross-examined Riley about what "I considered to be a completely lazy investigation." Trial counsel testified that he believed that the fact that Riley conducted virtually no investigation and did nothing more than show Gadson a single photograph "spoke volumes about how the investigation was conducted," and worked for the defense.

Trial counsel's tactical decision about how to most effectively

---

[2] In the summer of 2005, Battise's ex-girlfriend, Roberta Roberson, claimed for the first time that Battise was at her house on the night of the incident.

YALE LAW LIBRARY

cross-examine the State's witnesses at trial did not amount to ineffective assistance of counsel. *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003).

(d) Battise argues that his trial counsel was ineffective in failing to seek to suppress Gadson's out-of-court and in-court identifications of Battise. At the hearing on the motion for a new trial, trial counsel testified that he did not move to exclude the identification evidence because he thought the identification procedure "fit into a pattern that my client . . . was a victim of very sloppy police work." Given that trial counsel "made a strategic choice not to attempt to suppress the identification evidence, but instead to attack the identification testimony on cross-examination," Battise cannot establish that his trial counsel was ineffective. *Clay v. State*, 232 Ga. App. 656, 657 (1) (a) (503 SE2d 560) (1998).

Further, "[w]hen trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) *Rivers v. State*, 283 Ga. 1, 5 (3) (b) (655 SE2d 594) (2008). Assuming arguendo that the police utilized an unduly suggestive identification procedure, Gadson's identifications would have been admissible unless there was a "very substantial likelihood" of misidentification, taking into account the "totality of the circumstances." *State v. Hattney*, 279 Ga. 88, 88-89 (610 SE2d 44) (2005). "[W]hether the witness knows the defendant is a critical factor in determining the reliability of an identification." Id. at 89. Considering the totality of the circumstances and especially the fact that Gadson had known Battise for years, Battise has not made a strong showing the identification evidence would have been excluded.

(e) Battise claims that his trial counsel was ineffective because he should have moved for a mistrial after Detective Riley testified that he pulled up Battise's photograph from a computer system which allowed him to access jail records, thereby introducing evidence regarding Battise's character, in violation of OCGA § 24-2-2. We disagree. This "passing reference" to Battise's criminal record did not violate OCGA § 24-2-2. *Height v. State*, 281 Ga. 727, 730 (4) (642 SE2d 812) (2007). Because "there was no reasonable probability that a request for a mistrial would have been granted, trial counsel's failure to request one did not constitute deficient performance." (Footnote omitted.) *Smith v. State*, 294 Ga. App. 692, 706 (10) (g) (670 SE2d 191) (2008).

(f) Finally, Battise asserts that his trial counsel should have impeached or challenged Gadson's testimony in a number of respects. "The manner in which an attorney attacks the credibility of

a witness falls within the ambit of trial tactics." (Citation omitted.) *Washington v. State*, 276 Ga. 655, 659 (3) (a) (581 SE2d 518) (2003). Battise has failed to establish that his trial counsel's cross-examination of Gadson was unreasonable.

First, Battise claims that his trial counsel should have impeached Gadson's testimony at trial that he knew Battise from playing basketball with Gadson's testimony from the pretrial hearing, where Gadson testified that he knew Battise by sight but did not mention that he knew Battise from playing basketball. Although Gadson failed to mention that he had played basketball with Battise during the pretrial hearing, "the absence of [these] additional facts" in Gadson's prior testimony "fail[ed] to amount to a contradiction of [his] trial testimony." (Citations and punctuation omitted.) *Weathers v. State*, 198 Ga. App. 871 (2) (403 SE2d 449) (1991). As such, this was not a proper subject for impeachment.

Second, Battise argues that his trial counsel should have impeached Gadson's testimony at trial that the lookout was dressed in all black with Gadson's testimony at the pretrial hearing that the lookout was wearing a white tank top. "That [trial counsel] may not have impeached [Gadson] in every respect does not show that counsel's performance fell outside the broad range of reasonable professional conduct." (Citations omitted.) *Sims v. State*, 280 Ga. 606, 607-608 (3) (631 SE2d 656) (2006). Although trial counsel did not establish the discrepancy in Gadson's accounts of what the lookout was wearing, he did impeach Gadson's trial testimony that Battise was wearing blue jeans and a white shirt on the night of the incident by establishing during his cross-examination of the responding police officer that Gadson had reported that Battise was dressed in black.

Third, Battise claims that his trial counsel should have impeached Gadson's testimony at trial that the intruders took $20 with Gadson's testimony at a probation revocation hearing in one of Battise's earlier cases that $200 was missing. At the probation revocation hearing, however, Gadson testified, "I probably left about $200 on the table" but did not assert that $200 was missing from the apartment. Given that Gadson's testimony at the probation revocation hearing and at trial was not necessarily contradictory, Battise has failed to show that his trial counsel acted unreasonably.

Fourth, Battise claims that his trial counsel should have impeached Gadson's testimony that he could see Battise in the lights in the breezeway outside the apartment with Gadson's prior testimony at the probation revocation hearing that there were three long bar lights in the breezeway, "[b]ut like two of them [were] out," and the other one was "kind of flickering." Gadson admitted at trial, however, that "[in] the hallway, you got like three of those long bar

lights but like . . . some [are] out and one of 'em kinda flickerin' but I can still see kinda good." Given this testimony, trial counsel would have had no reason to use Gadson's prior testimony for impeachment.

Further, trial counsel cross-examined Gadson at length about the lighting in the breezeway and around the apartment complex. For instance, trial counsel showed Gadson photographs of the breezeway during the daytime, and Gadson admitted the breezeway is dark even in the day. Trial counsel also asked Gadson, "[i]t's often that those lights don't work, isn't that right?," and Battise replied, "[d]epends on the maintenance man. . . . Some nights you might got one or two workin.' Some nights one might be flickerin'."

Finally, Battise claims that his trial counsel should have done more to highlight Gadson's testimony at trial and at the probation revocation hearing that he recognized Battise's stature and build. Battise argues that Gadson did not explain what was unique about Battise's build and highlighting such testimony would have undermined Gadson's identification of Battise. As discussed above, trial counsel cross-examined Gadson extensively about his ability to see and recognize Battise.

Even if Battise had shown that his trial counsel's cross-examination of Gadson was deficient, he fails to articulate how any of the alleged deficiencies prejudiced him. Battise equates trial counsel's alleged deficiencies with a failure to call a key witness, but we see no such parallel.

For the reasons set forth above, we affirm the trial court's order denying Battise's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 15, 2009 —
RECONSIDERATION DENIED FEBRUARY 5, 2009

*Steven L. Sparger,* for appellant.
*Spencer Lawton, Jr., District Attorney, Isabel M. Pauley, Assistant District Attorney,* for appellee.