# FIRST DIVISION
## ELLINGTON, C. J.,
## PHIPPS, P. J., and DILLARD, J.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**September 28, 2012**

# In the Court of Appeals of Georgia

A12A1136. BADIE v. THE STATE.

PHIPPS, Presiding Judge.

A jury found Nathan Badie guilty of burglarizing a residence. Appealing his conviction therefor, Badie challenges the denial of his motion for a directed verdict of acquittal and the denial of his motion for new trial on the ground of ineffective assistance of counsel. We affirm.

1. Badie contends that the trial court erred by denying his motion for a directed verdict of acquittal.

The standard for reviewing a denial of a motion for a directed verdict of acquittal is the same test to be used when the sufficiency of the evidence is challenged, i.e., under the rule of *Jackson v. Virginia*,[1] whether the

---

[1] 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.[2]

The indictment charged that Badie, "during the period of time from April 24, 2010, through April 25, 2010 . . . without authority, and with the intent to commit a theft therein, enter[ed] the dwelling house of another, to wit: Desse E. Davis."[3]

The testimony of the state's witnesses, viewed in the light most favorable to the prosecution,[4] showed the following. On Sunday, April 25, 2010, around 9:00 a. m., Desse Davis and his wife returned to their home in Swainsboro, after having left it the previous morning. Glass alongside their front door was broken near the door knob, and their home had been ransacked. Davis summoned the police.

Property stolen from the home included a camera, checks, pieces of Davis's wife's jewelry, and a large plastic container that Davis had filled with coins – mostly quarters. The container had no lid and was almost too heavy for one man to carry.

---

[2] *Dorsey v. State*, 279 Ga. 534, 542 (3) (615 SE2d 512) (2005) (citations omitted).

[3] See OCGA § 16-7-1 (a) (burglary is committed, inter alia, when a person, "without authority and with the intent to commit a felony or theft therein, . . . enters . . . [the] dwelling house of another").

[4] *Jackson*, supra.

Davis testified that he had been saving the coins for 20 to 25 years. Several officers responded to Davis's police call, and he described to them the property taken from the home.

Davis recounted at trial that, during the two or three years before the burglary, someone had broken into his storage room. Also, on a few occasions, he had noticed the neighbor across the street "out in [the neighbor's] yard" – sometimes as late as 2:00 or 3:00 a.m. Davis recalled further that Badie sometimes visited that neighbor and that "[t]hey would be out in the yard." Because Davis perceived that he was being "watched," Davis revealed, "I try to leave early so people couldn't see me."

On Saturday, April 24, which was the day before the Davises returned to find their home burglarized, they had left their residence at about 5:15 a.m. Less than two hours later, Badie was seen in the vicinity of the Davises' residence struggling to haul a large, heavy container filled with coins, mostly quarters.

In that regard, the evidence showed that Badie was seen about 100 yards from the Davises' residence by a man sitting in a parked pickup truck. Badie approached the man and asked to be driven to a certain store because he needed to take his mother's coins there. When the man agreed, Badie first walked back to the area from which he had come, retrieved what the man described as a "five-gallon bucket" with

3

some type of a bag inside, returned to the truck, placed the container on the bed of the truck, then took a seat beside the container for the ride to the store. The man was asked at trial:

Q:    . . . And did [the five-gallon bucket] appear to be heavy?

A:    It appeared to be.

Q:    . . . Now do you think he could've made it all the way to [the store] with those coins just walking?

A:    Not from the way he was when he come down there where I was.

Badie arrived at the store at about 7:30 a. m., carrying what the store manager described as a mechanic's tool bag. Badie walked directly to the store's coin counting machine. Badie proceeded to pour coins out of the bag and into the machine; he continued to do so for such an extended period that it attracted the attention of store personnel. When the machine tallied about $600, the store manager interrupted Badie to advise him that the machine's hopper would soon be full, that the store did not have large amounts of cash so early in the morning, and that he therefore would not be able to put all of the remaining coins into the machine. Badie told the manager that the coins belonged to his mother and him, but soon stopped pouring coins into the machine.

4

The receipt for Badie's coin transaction showed a date-time stamp of April 24, 2010 at 8:03 a. m.; it reflected that Badie had put into the machine coins totaling $919.40 – comprised of 1 dollar, 3,666 quarters, 5 dimes, 26 nickels, and 10 pennies; and that for using the machine, he had paid a processing fee of $90.10. Badie left the store without incident, taking with him $829.30 received from a cashier, as well as the coins he had been unable to exchange due to the manager's interruption. Badie returned to the awaiting pickup truck and was driven to his mother's house, where Badie lived and which house was about a half-mile from the Davises' residence.

Meanwhile, because store personnel had become suspicious of what they viewed as a highly unusual transaction, they reported the matter to police. Later, a police detective, who had begun investigating the burglary at the Davises' residence, spoke with store employees. Based on information gathered therefrom, the detective interviewed Badie at the police station. During the interview, which was recorded and played for the jury, Badie stated that the coins were his (as opposed to his mother's, as he had told the driver of the pickup truck, and as opposed to his and his mother's, as he had told the store manager) and that he had been saving his change for approximately a year or a year and a half. When the detective questioned him about his ability to amass that amount of money by saving change during such time frame,

5

Badie answered that he was a "good saver" and that the time period may have been longer. The detective asked Badie also what had happened to the coins that he carried out of the store, and Badie answered, without expressing much concern, that those coins had been stolen.

At the trial, Badie neither testified nor called any witnesses.

Challenging the sufficiency of the evidence, Badie points out that the state's case included no witness who identified him as the person who had broken into the Davises' residence; no DNA or fingerprint evidence placing him there; no evidence of any findings of a police search of his home (because the police admittedly did not search Badie's home); and nothing to explain the whereabouts of other property Davis testified had been taken during the burglary, including the large plastic container that had held coins. Badie thus claims that the state's wholly circumstantial case failed to prove that the coins he took to the store belonged to Davis.

Badie is correct that the state's case relied on circumstantial evidence. But circumstantial evidence may authorize a conviction.[5] "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the

---

[5] See *Veasley v. State*, 312 Ga. App. 728, 730-731 (1) (719 SE2d 585) (2011).

hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[6]

> [Q]uestions about the reasonableness of hypotheses are generally for the jury's determination, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the defendant's guilt, this Court does not disturb such finding unless the verdict of guilty is insupportable as a matter of law.[7]

In this case, the verdict of guilty is not insupportable as a matter of law.

> [E]vidence of recent, unexplained possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the burglary. Once it is shown that goods were stolen in a burglary, absence of or unsatisfactory explanation of the possession of the goods will support a conviction for burglary based upon recent possession of the stolen goods. Whether a defendant's explanation of possession is satisfactory is a question for the jury; so is lack of explanation.[8]

---

[6] OCGA § 24-4-6.

[7] *Bryant v. State*, 282 Ga. 631, 634 (1) (651 SE2d 718) (2007) (citation omitted).

[8] *High v. State*, 282 Ga. 244 (1) (647 SE2d 270) (2007) (citations and punctuation omitted).

Badie acknowledges these legal principles, but maintains that the evidence was insufficient, relying on the principle: In "[a] burglary prosecution where the state relies upon the defendant's recent possession of allegedly stolen or feloniously taken goods for conviction, it is *absolutely essential* that the identity of stolen articles be *indisputably established*."[9] According to Badie, the state's evidence relative to the coins in his possession did not satisfy that requirement. However, as we have repeatedly instructed, "the emphasized language does not impose any additional burden of proof upon the State but is merely an application of the State's burden to prove defendants' guilt beyond a reasonable doubt."[10]

That being so, the evidence that, taken together, authorized the jury to find that Badie was in possession of Davis's stolen plastic container filled primarily with quarters included the following: Badie knew of the location of the residence burglarized; during the burglary, a large, heavy container filled with coins, primarily quarters, was stolen; within two hours of the Davises' departure from their home, Badie was seen approximately 100 yards away struggling to haul a large, heavy

---

[9] *Dunn v. State*, 213 Ga. App. 165, 166 (2) (444 SE2d 812) (1994) (citations and punctuation omitted; emphasis in original)

[10] Id. (citations and punctuation omitted); see, e.g., *Rich v. State*, 191 Ga. App. 312, 314 (2) (381 SE2d 567) (1989) (same).

container; Badie quickly arranged for transportation to haul the container to a store, where he redeemed 3,666 quarters (along with a few other coins); and he gave varying accounts of the ownership of the coins.[11] Whether any of Badie's explanations for his possession of such a large quantity of coins, mainly quarters, was satisfactory was a question for the jury.[12] "Because the factfinder has heard the witnesses and observed them testify, it is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court."[13] Viewed most favorably to the prosecution, the evidence was sufficient to authorize the jury to find that Badie was the perpetrator of the burglary.[14]

---

[11] See *Darby v. State*, 245 Ga. App. 657 (538 SE2d 538) (2000) (evidence, taken together, authorized jury to conclude that defendant was in possession of victim's recently stolen money); *Martin v. State*, 228 Ga. App. 59-61 (1), (2) (a) (491 SE2d 142) (1997).

[12] See *Bryant*, supra at 633-634 (1); *High*, supra.

[13] *McClain v. State*, 301 Ga. App. 844, 847 (1) (689 SE2d 126) (2010) (footnote omitted).

[14] See *Martin v. State*, 254 Ga. App. 40-41 (1) (561 SE2d 154) (2002) (evidence was sufficient to support burglary convictions, where defendant had done work at the homes where burglaries occurred, had recently possessed and subsequently pawned the stolen goods, and made conflicting statements to police and abruptly changed his demeanor when presented with a blatant inconsistency); *Pope v. State*, 240 Ga. App. 803, 804 (1) (522 SE2d 291) (1999); *Martin*, 228 Ga. App. at 59-61 (1) (2) (a) (evidence that victim's home was broken into and large sum of cash

2. Badie contends that the trial court erred in rejecting his claim of ineffective assistance of counsel.

To prevail on an ineffectiveness claim, a defendant must establish, pursuant to *Strickland v. Washington*,[15] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[16] Both the performance and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact.[17] In reviewing a trial court's determination regarding a claim of ineffective assistance

was taken shortly after defendant accompanied victim's boyfriend to hide cash in victim's bedroom, and that defendant told police that he had won the big wad of money discovered in his possession at time of arrest in lottery, even though lottery records did not indicate any payment had been made to defendant, was sufficient to support burglary conviction); *Barrett v. State*, 166 Ga. App. 722-723 (305 SE2d 450) (1983) (evidence was sufficient to support conviction for burglary during which numerous items were taken, where some of the items stolen during the recent burglary were found lying on floorboard of car in which defendant was sitting and other items stolen in same burglary were found outside the car where the co-defendant was standing, and where jury was authorized to reject defendant's explanations concerning the stolen items); see also *McClain*, supra at 846-847 (1) (although there was no testimony from anyone who saw defendant take stolen items, evidence that he was in possession of or otherwise associated with the stolen items shortly after they were taken was sufficient to authorize his conviction for theft by taking; jury was not required to believe defendant's testimony that items were taken by someone else).

[15] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[16] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[17] *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000).

of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review the trial court's legal conclusions de novo.[18] "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, it is not incumbent upon the reviewing court to examine the other prong."[19]

Badie argues that his trial lawyer's performance was deficient in that the lawyer failed to present evidence that might have led the jury to conclude that the coins in his possession were not the same ones stolen from the Davises' residence. In an effort to support this argument, Badie presented at the new trial hearing two documents that he claimed were police reports of the burglary incident. One document showed as its author the first officer who responded to Davis's call for police. That document, which Badie's trial lawyer admittedly had received prior to the trial, noted, in connection with the stolen property: "Change in plastic Tub (Quarters)" and a stated value of "$400." The other document presented by Badie at the new trial hearing did not include the name of any authoring officer. However, Badie's trial lawyer admitted that he had received that document, too, prior to trial. Like the first document, it

---

[18] Id. at 88 (4).

[19] *Battles v. State*, 290 Ga. 226, 229 (2) (719 SE2d 423) (2011) (citation omitted).

contained a notation: "(Change) $300 to $400 in quarters, that was stored in a plastic tub."

Badie complains that, despite having received these two documents prior to trial, his lawyer failed to pursue these leads so as to present evidence that Davis reported to responding officers at the scene an amount of stolen money (in coins) that was less than the amount of money (in coins) shown in his (Badie's) possession. Badie claims that his lawyer should have attempted to impeach Davis by calling as witnesses the officers who wrote those reports and by cross-examining Davis concerning the loss he reported.

Even if we overlook that Badie did not call at the new trial hearing any officer who authored any such police report,[20] we cannot conclude that Badie's trial lawyer rendered ineffective assistance for not including in the defense the tactic Badie describes. "There is a strong presumption that counsel's conduct falls within the

---

[20] See generally *Dickens v. State*, 280 Ga. 320, 321-323 (2) (627 SE2d 587) (2006) (holding that where a defendant contends that trial counsel was ineffective in failing to call a witness to testify on his behalf, he must call the witness to testify at the motion for new trial hearing or present some legally acceptable substitute in order to show that, if the witness had testified, there is a reasonable probability the outcome of the trial would have been different); *Veasley*, supra at 732 (2) (a) (defendant failed to show prejudice, where he failed to call officer to testify at new trial hearing or make any other proffer of evidence to show that purported evidence would have actually been exculpatory).

range of sound trial strategy and reasonable professional judgment. In determining prejudice, the question is whether there is a reasonable probability that the result of the trial would have been different, absent the specified errors."[21]

Davis was not asked at trial about the dollar amount of the coins he reported to police as stolen. Badie's trial lawyer explained at the new trial hearing that he had not found the discrepancy to present a significant issue. As Badie's trial lawyer intimated at the new trial hearing, there was no evidence that Davis had employed any systematic method of accounting or inventory over the course of the 20 to 25 years he was accumulating the coins. Rather, Davis described how he had obtained mainly quarters, whenever opportunities presented themselves, whereupon he heaped the coins together in a big, open, plastic container.

Further elaborating, Badie's trial lawyer testified at the new trial hearing that, "in preparing for this case with respect to the dollar value of the quarters, I thought the complete absence of the physical evidence entirely was the larger point and that's what I – that's what my primary trial strategy was." Thus, Badie's trial lawyer explained that the primary defense strategy was to attack the state's case as lacking

---

[21] *Newkirk v. State*, 290 Ga. 581, 582 (2) (722 SE2d 760) (2012) (citations omitted).

what he had argued was critical linking evidence, e.g., a large plastic container, other items reportedly stolen (camera, checks, jewelry), and findings of a police search of Badie's residence. And the trial transcript shows that, in addition to pointing out the absence of that evidence, the lawyer cited the lack of any eyewitness testimony placing Badie at the Davises' residence at the pertinent time, as well as the lack of DNA and fingerprint evidence.

The alleged deficiencies in Badie's trial counsel's performance were decisions made as matters of trial strategy.[22] Although his trial lawyer did not pursue further the specific tactic of impeachment by the claimed discrepancy, Badie nevertheless did not overcome the strong presumption that the particular defense employed fell within a wide range of reasonable professional assistance.[23] "That [Badie] and his present

---

[22] See *Payne v. State*, 289 Ga. 691, 697 (3) (b) (715 SE2d 104) (2011) (decisions about what questions to ask on cross-examination are quintessential trial strategy); *Washington v. State*, 276 Ga. 655, 659 (3) (a) (581 SE2d 518) (2003) (manner in which an attorney attacks the credibility of a witness falls within ambit of trial tactics).

[23] See *Strickland*, supra at 689 (III) (A) (a court must indulge a strong presumption that counsel's conduct falls within wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy); *Farris v. State*, 290 Ga. 323, 326 (3) (720 SE2d 604) (2012) (same); *Upton v. Parks*, 284 Ga. 254, 257-258 (2) (664 SE2d 196) (2008) (trial counsel's decision not to pursue tactic of calling certain alibi witnesses did not constitute deficient performance, but was a

14

counsel disagree with his trial counsel's strategy does not require a finding of ineffective assistance."[24]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

fully considered and well reasoned decision under the circumstance, where trial counsel testified that he had determined that the defense of misidentification and the lack of any physical evidence linking defendant to crime was strong enough on its own and that he had concerns about the credibility of the alibi witnesses); *Battise v. State*, 295 Ga. App. 833, 839-840 (2) (f) (673 SE2d 262) (2009) (rejecting claims that trial counsel should have impeached witness with specific evidence).

[24] *Williams v. State*, 265 Ga. 681, 682 (1) (461 SE2d 530) (1995).