**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 13, 2013**

# In the Court of Appeals of Georgia

A13A0510. RUDISON v. THE STATE.

MCFADDEN, Judge.

James Rudison was convicted of several offenses stemming from a home invasion – armed robbery, aggravated assault, burglary, and possession of a firearm during the commission of a crime. He appeals. As detailed below, we find that there was sufficient evidence to support the convictions, that Rudison did not receive ineffective assistance of counsel, and that the trial court did not err in instructing the jury to continue deliberations after the jury had informed the court that it could not reach an agreement. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

Rudison challenges the sufficiency of the evidence. On appeal, "the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 3781, 61 LE2d 560) (1979).

So viewed, the evidence showed that in the early morning on September 8, 2008, Donnie Norris opened his front door to a person he knew, who asked to use Norris's bathroom. While that person was in the bathroom, Norris observed through a video monitor two persons wearing black masks pacing back and forth in front of his house. He locked the front door, retreated to his bedroom and called 911, but before he could speak to the operator a masked man entered the room, struck him on the head, forced him to the floor, threatened to shoot him, and demanded money and the location of a safe. Norris feared for his life. When he denied having a safe, the man struck him with a gun, rendering him temporarily unconscious. At some point, a second man entered the bedroom. The men took jewelry off of Norris's person and money from his wallet. A visitor to the house, who arrived while the invasion was in progress, saw two masked men, carrying guns, emerge from Norris's bedroom and head toward the back of the house.

The 911 operator dispatched law enforcement officers to Norris's address. When the officers arrived they heard a "commotion" in the laundry room at the back

2

of the house, which was near an exterior door blocked by various items and locked with a deadbolt. The police officers discovered Rudison and another man in the laundry room. They also found masks, gloves, money, and some of Norris's jewelry in or near the laundry room, and they found a gun stashed between the washing machine and dryer.

The police took Rudison to the police station where they interviewed him. The station's practice was for officers to remove an interview subject's shoes, belt and any items in his pockets and place those items outside the interview room during the interview. A detective found two of Norris's rings among the items left outside Rudison's interview room.

One to two weeks after the home invasion, Norris found another gun hidden in his laundry room. Subsequently, a Georgia Bureau of Investigations forensic scientist identified Rudison's DNA in saliva found inside one of the masks recovered from Norris's laundry room.

Rudison argues that this evidence was insufficient to support his convictions, because no witness identified him as one of the masked men and the circumstantial evidence did not exclude every reasonable hypothesis save that of his guilt. See former OCGA § 24-4-6 (2012) ("To warrant a conviction on circumstantial evidence,

3

the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). (A comparable provision is found in Georgia's newly-enacted evidence code at OCGA § 24-14-6.) Rudison suggests the possibility that he was framed, pointing to evidence that he was intoxicated the night of the crime and that a number of other people were on the scene at the time. The jury, however, was entitled to reject this suggestion as unreasonable. See *Shields v. State*, 285 Ga. 372, 375 (1) (677 SE2d 100) (2009) (jury was authorized to reject as unreasonable defendant's theories about possible causes of victim's death); *Mitchell v. State*, 312 Ga. App. 293, 296 (1) (718 SE2d 126) (2011) (whether circumstances were sufficient to exclude every reasonable hypothesis save for defendants' guilt was jury question). The evidence was sufficient for the jury to find that Rudison committed the offenses of armed robbery, OCGA § 16-8-41, aggravated assault, OCGA § 16-5-21, burglary, OCGA § 16-7-1, and possession of a firearm during the commission of a crime, OCGA § 16-11-106.

2. *Effectiveness of counsel's assistance.*

Rudison argues that he received ineffective assistance of trial counsel for failing to object to certain parts of the testimony of a police detective. To prevail on this claim, he "must show counsel's performance was deficient and that the deficient

4

performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." (Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). In reviewing a trial court's determination on a claim of ineffective assistance of counsel, we uphold the trial court's factual findings unless they are clearly erroneous and review the court's legal conclusions de novo. *Badie v. State*, 317 Ga. App. 712, 717 (2) (732 SE2d 553) (2012). For the reasons set forth below, we find that Rudison has failed to show he received ineffective assistance.

(a) *Detective's testimony about rings.*

First, Rudison argues that his trial counsel should have objected, on hearsay and confrontation clause grounds, to the detective's testimony that another officer told him that two rings, later determined to belong to Norris, had been removed from Rudison's pants at the police station. Assuming without deciding that trial counsel performed deficiently in failing to object to this testimony, Rudison has not shown that he was prejudiced as a result, because the testimony was cumulative of other evidence that the rings were found among Rudison's belongings outside of his interview room and of evidence that the practice at the police station was to place items taken from an interview subject's pockets outside the room during the

interview. See *Williams v. State*, __ Ga. __ (3) (a) (__ SE2d __) (Case No. S13A0292, decided April 29, 2013) (finding defendant failed to show that he was prejudiced by trial counsel's failure to object to alleged hearsay testimony, even if the failure constituted deficient performance, because the testimony was cumulative of other testimony and evidence).

(b) *Detective's testimony about the second gun.*

Rudison also argues that his trial counsel should have objected and moved for a mistrial when the detective testified that Norris told him he found the second gun hidden in his laundry room. He argues that this testimony impermissibly bolstered Norris's earlier testimony about finding the second gun. See generally *Williams*, __ Ga. at __ (3) (c) (discussing rules for admissibility of witness's prior consistent statement under Georgia's former evidence code).

Again, Rudison has not demonstrated that his counsel's failure to object to this testimony, even if it constituted deficient performance, prejudiced him. The state presented evidence that police found Rudison hiding in Norris's laundry room, that they also found stolen jewelry and a mask bearing Rudison's DNA in or near the laundry room, and that they found a gun hidden in the laundry room on the night of the home invasion. Given this overwhelming evidence of Rudison's guilt, no

reasonable probability exists that, but for counsel's failure to object to the allegedly bolstering testimony about the second gun, the outcome of the trial would have been different. See *Decapite v. State*, 312 Ga. App. 832, 836-837 (4) (720 SE2d 297) (2011) (finding that, even if allegedly bolstering statement was inadmissible, defendant did not demonstrate that counsel's failure to object to it prejudiced him where "[s]ignificant other evidence . . . implicated him in the crimes"); see also *Westbrook v. State*, 291 Ga. 60, 62 (2) (727 SE2d 473) (2012) (finding that any error in court's admission of allegedly bolstering statement was harmless where evidence of defendant's guilt was overwhelming).

3. *Instruction for jury to continue deliberations.*

During deliberations, the jury twice informed the trial court that it could not reach an agreement. After having deliberated for close to seven hours, the jury stated in a note to the court: "We cannot agree on some of the charges. What do we do?" With the acquiescence of Rudison's counsel, the court instructed the jury, "Continue deliberation." About an hour later, the jury sent another note to the court, stating: "We cannot come to an agreement. We have voted multiple times. We have at least two members who have stated that they will not change; what do we do?" When the trial court again proposed instructing the jury to continue deliberations, counsel for one

7

of Rudison's co-defendants objected and Rudison's counsel joined the objection and moved for a mistrial. The court opined that a mistrial was premature and instead instructed the jury to continue deliberations. The jury deliberated another full day, during which it requested to be recharged on certain points and to rehear the audiotape of the 911 call. The jury gave no further indication that it was deadlocked, and the trial court never gave the jury an *Allen* charge. See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896). The next day, the jury reached its verdict.

Rudison argues that the second instruction to continue to deliberate was reversible error because the instruction was improperly coercive and did not contain the "safeguards of an approved *Allen* charge." We disagree. "[T]he trial court made no statements that could be construed as attempting to force any juror to give up his or her honest opinion. The fact that the court did not reiterate that a jury should not surrender his or her convictions merely in order to reach a verdict did not render its treatment of the situation coercive." (Citations omitted.) *Mayfield v. State*, 276 Ga. 324, 330 (2) (a) (578 SE2d 438) (2003).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*